**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION**

**COREY BOUCHE LARRY,**

        **Plaintiff**

**v.**                                **Civil Action No. 2:21-cv-00611**

**EXPERIAN INFORMATION SOLUTIONS,
INC.,**
**475 Anton Blvd, Costa Mesa, CA 92626**
**SERVE: David Anthony, registered agent**
        **TroutmanPepper LLP**
        **1001 Haxall Point**
        **Richmond, VA 23219**

**EQUIFAX INFORMATION
SERVICES, LLC,**
**1550 Peachtree St NW, Atlanta, GA 30309**
**Serve: Corporation Service Company, registered agent**
        **100 Shockoe Slip Fl 2**
        **Richmond, VA, 23219**

        **Defendants.**

**<u>COMPLAINT AND DEMAND FOR JURY TRIAL</u>**

Plaintiff Corey Bouche Larry, ("Plaintiff") alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* against Defendants Experian Information Solutions, Inc. ("Experian") and Equifax Information Services, LLC ("Equifax"); ("Defendants").

## I.    <u>INTRODUCTION</u>

1.    Plaintiff's Complaint arises from Defendants' violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*. Defendants failed to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's consumer reports, and consequently reported inaccurate information about him. "Consumer reports" under 15 U.S.C. § 1681a(d) include both credit file disclosures obtained directly by Plaintiff from the

consumer reporting agencies and consumer reports obtained by third parties as a factor in establishing Plaintiff's eligibility for credit or other permissible purpose described in the FCRA.

## II.      JURISDICTION AND VENUE

2.      This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 because Plaintiff alleges violations of the FCRA, a federal law. *See* 15 U.S.C. § 1681p (FCRA) (permitting actions to enforce liability in an appropriate United States District Court).

3.      Venue in the Eastern District of Virginia, Norfolk Division is proper pursuant to 28 U.S.C. § 1391 because Defendants regularly transact business within this District, have registered agents in Virginia, are otherwise subject to personal jurisdiction in this District, and a substantial part of the events giving rise to Plaintiff's claims occurred in this District and Division.  The Plaintiff resides within the geographic boundaries of the Norfolk Division.

## III.      PARTIES

4.      Plaintiff is a natural person who resides in Suffolk, Suffolk City County, Virginia.

5.      Plaintiff is a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a(c).

6.      Defendant Experian is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f).  On information and belief, Experian is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports," as defined in 15 U.S.C. § 1681a(d), to third parties. Experian's principal place of business is located at 475 Anton Boulevard, Costa Mesa, California 92626.

7.      Defendant Equifax is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f). Upon information and belief, Equifax is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers in the form of "consumer reports," as defined in 15 U.S.C. § 1681a(d), to third parties. Equifax's principal place of business is located

at 1550 Peachtree Street NW, Atlanta, GA 30309.

8.      During all times pertinent to this Complaint, Defendants were authorized to conduct business in the Commonwealth of Virginia and conducted business in the Commonwealth of Virginia on a routine and systematic basis.

9.      Defendants regularly engage in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 USC § 1681a(d), to third parties. Defendants regularly furnish consumer reports to third parties for monetary compensation, fees, and other dues, using means and facilities of interstate commerce, and are therefore "consumer reporting agencies" as defined by 15 U.S.C. § 1681a(f) of the FCRA.

10.     During all times pertinent to this Complaint, Defendants acted through authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

11.     Any violations by Defendants were not in good faith, were knowing, negligent, willful, and/or intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such violation.

## IV.      FACTUAL BACKGROUND

12.     The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continual functioning of the banking system.

13.     Congress enacted the FCRA to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

14.     The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other consumer information.

15.     Defendants, two of the three major nationwide consumer reporting agencies (at times referred to collectively as "the CRAs" and individually as a "CRA") in the United States, regularly publish and distribute credit information about Plaintiff and other consumers through the sale of consumer reports.

16.     Defendants regularly obtain consumer bankruptcy information to include in consumer reports.

17.     Defendants' consumer reports generally contain the following information: (i) Header/Identifying Information: this section generally includes the consumer's name, current and prior addresses, date of birth, and phone numbers; (ii) Tradeline Information: this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status; (iii) Public Record Information: this section typically includes public record information, such as bankruptcy filings; and (iv) Credit Inquiries: this section lists every entity that has accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications for credit cards, to rent an apartment, to open a deposit account, or for other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

18.     Defendants obtain consumer information from various sources. Some consumer information is sent directly to Defendants by furnishers, and other information is independently gathered by Defendants from third party providers, vendors or repositories, like computerized

reporting services like PACER and Lexis-Nexis.

19.     Defendants regularly seek out and procure public record information, including consumer bankruptcy filing and discharge information, with the intention of including it on the consumer reports Defendants sell to third parties such as lenders.

20.     The diligence Defendants exercise in uncovering and recording consumer bankruptcy filings is not replicated in Defendants' subsequent reporting of bankruptcy discharges and their effect on consumers' debts.

21.     CRAs sell consumer reports to a variety of users, including but not limited to, creditors, lenders, debt collectors, employers, landlords, background check companies, governmental agencies.

22.     The vast majority of institutions that offer financial services (e.g., banks, creditors, lenders) rely upon consumer reports from CRAs (like Defendants) to make lending decisions.

23.     Those institutions also use FICO Scores, and other proprietary third-party algorithms (or "scoring" models), including debt-to-income ratios, to interpret the information in a consumer's consumer report, which is based on the amount of reported debt, payment history, date of delinquencies contained in Defendants' reports.

24.     The information Defendants include in a consumer report contributes to a consumer's overall creditworthiness and determines their FICO Score(s).

25.     FICO and other third-party algorithms use variables or "attributes" derived from a consumer's consumer report to calculate a "credit score," which is a direct reflection of a consumer's creditworthiness.

26.     FICO Scores factor the following consumer report information: Payment history (35%); Amount of debt (30%); Length of credit history (15%); New credit (10%); and Credit mix

(10%).

    a. "Payment history" refers to whether a consumer has paid his or her bills in the past, and whether these payments have been timely, late, or missed. In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently the delinquency occurred, and how many delinquent accounts exist. The more severe, recent, and frequent late payments are, the lower a consumer's FICO Score will be.

    b. The "amount of debt" a consumer owes has a major impact on their credit score. When a CRA reports a debt as outstanding when it is in fact discharged, the CRA is indicating that a consumer's "amount of debt" is higher than it actually is, which will undoubtedly impact a consumer's credit score.

27.     Lenders also consider a consumer's debt-to-income ratio (DTI) based on the total amount of debt reported by Defendants in consumer reports.  DTI compares the total amount a consumer owes to the total amount a consumer earns.

28.     A consumer's income, however, is not included in their consumer report; only their amount of debt is.

29.     Lenders consider a consumer's DTI when deciding whether to approve financing and the credit terms thereof.

30.     The higher the amount of reported debt that a consumer has, or appears to have, the worse the consumer's DTI will be, and the more difficult it will be for a consumer to obtain credit, and the credit terms will be worse (e.g., higher interest, lower credit limits).

31.     A consumer who has obtained a bankruptcy discharge and has a consumer report that is inaccurately reporting outstanding or past due balances after the bankruptcy discharge

suffers greater harm than if that account were accurately reporting with a zero-dollar balance.

32.     Defendants are well aware that the effect of a discharge Order in a Chapter 13 Bankruptcy is to discharge unsecured debts that are listed in Plaintiff's bankruptcy petition.

33.     Defendants are further aware that the default rule is that all unsecured debts will be listed and discharged in Chapter 13 bankruptcy and that only on rare occasions will an unsecured debt not be discharged upon completion of a Chapter 13 plan.

34.     Additionally, information indicating that a specific debt has not been discharged, but instead was successfully challenged through an adversary proceeding, is retrieved from the same sources from which Defendants independently obtain consumer bankruptcy case information.

35.     Defendants are also notified of consumer bankruptcies by furnishers of information, and from the information Defendants independently gather from third parties.

36.     Defendants' unreasonable policies and procedures cause them to routinely report inaccurate and materially misleading information about consumers, including Plaintiff, who have been discharged from Chapter 13 Bankruptcy.

37.     Defendants' unreasonable policies and procedures cause them to regularly report consumer information without verifying its accuracy.

38.     Defendants' unreasonable policies, procedures and/or algorithms consistently fail to identify and update pre-bankruptcy debts as required by § 1681(e)(b).

39.     Defendants routinely report inaccurate, and materially misleading information about consumers like Plaintiff, without verifying or updating the information as required by § 1681(e)(b), despite possessing information: inconsistent with the reported information and/or that establishes the reported information is inaccurate.

40.     Despite being frequently sued for inaccurately reporting tradelines subsequent to bankruptcy discharge and harming numerous consumers by doing so, the Defendants haven't meaningfully changed their procedures to ensure that the tradelines are reporting with maximal accuracy.

41.     Instead, Defendants employ no, minimal, or practically meaningless measures to prevent inaccurate tradeline reporting post-discharge.

42.     Rather than follow reasonable procedures to assure maximum possible accuracy, as required by the FCRA, Defendants frequently report information regarding pre-bankruptcy debts based on incomplete or knowingly inaccurate information.

43.     Defendants regularly publish consumer information that conflicts with information: provided by data furnishers to Defendants, already included in Defendants' credit files, contained in public records that Defendants regularly access, and/or sourced through Defendants' independent and voluntary efforts.

44.     Further, Defendants know the information they report about consumers' bankruptcies is often inconsistent with public records, furnished or reported information, and/or information contained in Defendants' own files.

45.     Consumers have filed thousands of lawsuits and FTC and Consumer Financial Protection Bureau complaints against Defendants for their inaccurate consumer reporting following a Chapter 13 discharge.

46.     Thus, Defendants are on continued notice of their inadequate post-bankruptcy reporting procedures, which cause Defendants to report inaccurate balances, account statuses, payment histories, and/or payment statuses.

*Allegations Specific to the Credit Reporting of Plaintiff*

47.     Plaintiff filed a Chapter 13 Bankruptcy on or about December 7, 2017, in the United States Bankruptcy Court for the Eastern District of Virginia (Case No. 17-74362-SCS).

48.     Plaintiff complied with all obligations during the Chapter 13 Bankruptcy.

49.     Accordingly, after paying on his plan for more than 3-1/4 years, Plaintiff received an Order of Discharge on or about April, 22, 2021.

50.     Thereafter, Plaintiff was not personally liable for the dischargeable debts, and these debts had a zero-dollar balance after the bankruptcy discharge.

51.     Defendants prepared one or more consumer reports concerning Plaintiff after Plaintiff was discharged from Chapter 13 Bankruptcy.

52.     Defendants had actual knowledge of the Plaintiff's bankruptcy case and had complete access to all records in the case, just like every single member of the public.

53.     In Plaintiff's consumer reports, Defendants included the bankruptcy case number, court, filing date and the fact that Plaintiff's bankruptcy had been discharged.

54.     Defendants also reported Plaintiff's credit history in individual "tradelines," including names of credit accounts, account numbers, account types, responsibility for the account (i.e., individual or joint accounts), the date the accounts were opened, statuses, and the dates of the last status update.

55.     Defendants reported Plaintiff's bankruptcy filing and bankruptcy discharge information (date/court/chapter) in the Public Records section and individual tradelines of Plaintiff's consumer reports.

56.     Defendants obtained notice of Plaintiff's bankruptcy discharge through their routine, independent collection of consumer information from third party vendors such as Lexis-Nexis, as well as from furnishers that provide data regarding the individual tradelines reported by

Defendant in Plaintiff's consumer reports.

57.     Upon information and belief, the Defendants do not review, verify, or check the accuracy of the bankruptcy data they purchase before adding it to a consumer file and publishing it upon request to third parties or the consumer.

58.     Upon information and belief, despite being sued multiple times for the failure to ensure the maximum possible accuracy of the bankruptcy information it sells to third parties, the Defendants do not obtain, review, verify or check either the docket or the actual court records to ensure the accuracy of any tradelines after they are put on notice of a Chapter 13 discharge.

59.     Defendants are aware that CRAs are generally required to report accounts included in a consumer's Chapter 13 Bankruptcy with a status of "discharged through bankruptcy," and/or with a zero-dollar balance, unless a furnisher provides information showing that a specific debt was excluded from the discharge.

60.     Defendants should have reported **all** of Plaintiff's dischargeable, pre-petition debt as included in or discharged in Chapter 13 Bankruptcy, and/or with a zero-dollar balance but did not.

61.     Rather than accurately report the discharged debts, Defendants inaccurately reported Plaintiff's Verizon Account (the "Account"), starting with 2215****** and opened in October 2008, which predated Plaintiff's bankruptcy filing.

62.     The Account was included in Plaintiff's bankruptcy and discharged on or about April 22, 2021.  Therefore, the Account should have been reported as discharged in bankruptcy, and/or with a zero-dollar balance.

63.     However, Experian and Equifax inaccurately reported the discharged Account as a "collection account" with a balance of $180 and $180 past due, instead of a zero-dollar balance.

64. Experian and Equifax did not indicate that the Account was discharged in bankruptcy or report the Account with a zero-dollar balance, despite reporting Plaintiff's bankruptcy in the public records section of Plaintiff's consumer report, and reporting other pre-bankruptcy accounts as "Discharged/Included in Bankruptcy Chapter 13," and/or with zero balances.

65. Notably, the other national CRA, Trans Union, did not inaccurately report the Accounts like Experian and Equifax.

66. Upon information and belief, Verizon furnished information to Defendants that indicated Plaintiff's debt was included or discharged in bankruptcy, and/or had a zero-dollar balance after the bankruptcy discharge, but Defendants rejected or otherwise overrode the data they received.

67. Alternatively, upon information and belief, Defendants knew from past experiences that Verizon furnished inaccurate information regarding discharged debts or, has historically failed to employ reasonable procedures to ensure it properly updates consumer debts after a Chapter 13 Bankruptcy is discharged.

68. Nevertheless, Defendants blindly relied on the information provided by Verizon even though this information conflicted with or was contradicted by information contained in Defendants' records, as well as Defendants' knowledge regarding Plaintiff's bankruptcy and discharge.

69. Defendants' reliance on the furnisher, Verizon, was therefore unreasonable.

70. Defendants inaccurately reported that Plaintiff owed a balance that Plaintiff did not actually owe, and also reported inaccurate account statuses and/or payment histories.

71. Defendants inaccurately reported the Account with a balance owed after the

Account was discharged in Chapter 13 Bankruptcy and therefore had a zero-dollar balance.

72.     Defendants failed to indicate that the Account had a zero-dollar balance and/or was included/discharged in Chapter 13 Bankruptcy.

73.     Defendants' reporting of the Account is patently false and therefore inaccurate.

74.     Even if it weren't patently false, Defendants' reporting of the Account is materially misleading and therefore inaccurate.

<u>*Plaintiff's Injuries and Damages*</u>

75.     Upon information and belief, had Defendants accurately reported the Account as discharged with a zero balance, Plaintiff's credit scores and/or DTI would have been better.

76.     After Plaintiff's bankruptcy discharge, Plaintiff applied for credit with Quicken Loans Inc. and Capital One. Both Quicken Loans Inc. and Capital One received Plaintiff's credit reports from Experian and Equifax. Plaintiff was denied credit with both creditors due to the inaccurate reporting of the Account by Defendants.

77.     Defendant Experian's inaccurate reporting of the Account, along with additional information belonging to Plaintiff, was published to Capital One, Credco/Quicken Loans Inc., and Bluestem/WebBank/Fingerhut by Defendant Experian during the process of Plaintiff's credit applications.

78.     Defendant Equifax's inaccurate reporting of the Account, along with additional information belonging to Plaintiff, was published to Capital One and CoreLogic Credco by Defendant Equifax during the process of Plaintiff's credit applications.

79.     Defendants' conduct injured the Plaintiff by depriving him of the benefits of the fresh start he was entitled to enjoy following the successful discharge from bankruptcy, which the bankruptcy law was enacted to promote.

80.     As a direct result of Defendants' inaccurate reporting, Plaintiff suffers additional injuries and resulting damages, including a decreased credit score, lower overall creditworthiness, and other financial harm.

81.     Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish, humiliation, stress, anger, loss of sleep, reputational damage, frustration, shock, embarrassment, violation of privacy, and anxiety.

## V.     COUNT I
### Violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681e(b)

82.     Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully set forth herein at length.

83.     The FCRA requires CRAs, like Defendants, to maintain and follow reasonable procedures to assure maximum possible accuracy of consumer information. 15 U.S.C. § 1681e(b).

84.     Defendants negligently and/or willfully violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to assure maximum possible accuracy of credit information pertaining to pre-bankruptcy debts after a consumer receives a Discharge Order.

85.     In this case, Defendants inaccurately reported debts related to accounts that Defendants knew predated Plaintiff's Chapter 13 Bankruptcy, were included and discharged by Plaintiff's bankruptcy discharge, and should therefore have reported with a zero-dollar balance.

86.     Defendants independently sought information about Plaintiff's bankruptcy filing and discharge and voluntarily reported this information in Plaintiff's consumer reports.

87.     When Defendants voluntarily procured and published Plaintiff's bankruptcy information, they had an obligation to ensure they followed reasonable procedures to report the bankruptcy discharge and its effect(s) with maximal accuracy.

88.     Despite knowledge of these legal obligations, Defendants willfully and consciously breached their known duties and deprived Plaintiff of Plaintiff's rights under the FCRA. Defendants knew or should have known of their obligations under the FCRA, especially those pertaining to reporting discharged debt with a zero-dollar balance.

89.     These obligations are well established by the plain language of the FCRA, promulgated by the Federal Trade Commission, detailed case law and evidenced in prior cases involving Defendants from which Defendants are on notice of their unreasonable procedures concerning the reporting of discharged debts.

90.     Defendants knew or should have known that the effect of a discharge Order in a no asset Chapter 13 Bankruptcy is to discharge all statutorily dischargeable debts other than those that have been successfully challenged in an adversary proceeding.

91.     Defendants know that discharged debts should not be reported as late, past due, or with outstanding balances after the discharge date, and should be reported with a zero-dollar balance.

92.     Additionally, Defendants possess or could easily obtain substantial written materials that detail CRAs' duties and obligations under the FCRA, including those that apply when consumers file for Chapter 13 Bankruptcy.

93.     Yet in this case, Defendants reported the Account, which predated Plaintiff's bankruptcy, with a balance owed after discharge, instead of a zero-dollar balance.

94.     Defendants had actual knowledge of Plaintiff's bankruptcy and Discharge Order, as evidenced by the information they published in Plaintiff's consumer reports, including the bankruptcy case number, court, date of filing and date of discharge.

95.     Defendants are also on notice from other tradelines reported by Defendants that

indicate Plaintiff's accounts were included in and discharged in bankruptcy.

96.    Defendants received notice of Plaintiff's bankruptcy discharge through public records, their own files, and information provided by data furnishers.

97.    Defendants had prior notice of their unreasonable procedures for reporting discharged debt.

98.    Defendants also possessed information from which Defendants should have known the information reported about Plaintiff was inaccurate, as Plaintiff's consumer reports include: the date the consumer filed bankruptcy, whether the consumer obtained a bankruptcy discharge, as well as the date the inaccurate tradeline account/debt arose or was otherwise opened by the consumer.

99.    Defendants violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the information included in Plaintiff's credit file/report.

100.    Defendants also violated 15 U.S.C. § 1681e(b) by failing to report accurate information when Defendants knew or should have known the information they were reporting is inaccurate, and/or otherwise contradicted by information known by Defendants, reported to Defendants, and/or reasonably available to Defendants.

101.    Defendants' violations of 15 U.S.C. § 1681e(b) were willful.

102.    Alternatively, Defendants' violations of 15 U.S.C. § 1681e(b) were negligent.

103.    Defendants' inaccurate reporting injured the Plaintiff by reducing his creditworthiness.

104.    Plaintiff suffered injuries in fact as a direct and proximate result of each Defendant's conduct, resulting in actual damages, including a decreased credit score, loss of credit

opportunities, credit denial, and other financial harm caused by Defendants inaccurately reporting a balance for a debt that was discharged in bankruptcy, and otherwise failing to report that the debt was discharged in bankruptcy.

105.    Plaintiff also suffers injuries such as interference with daily activities caused by other harm including, but not limited to, emotional distress, mental anguish, humiliation, stress, anger, loss of sleep, frustration, shock, embarrassment, anxiety, and physical sickness.

106.    Defendants' conduct is the direct and proximate causes of Plaintiff's injuries and resulting damages.

107.    Defendants are substantial factors in Plaintiff's damages.

108.    Therefore, Defendants are each individually liable for actual and statutory damages, punitive damages, attorneys' fees, costs, as well as other such relief permitted by 15 U.S.C. § 1681 *et seq*.

## VI.    <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff demands the following relief authorized the FCRA:

(a)    Declaratory judgment that Defendants violated the FCRA, 15 U.S.C. § 1681e(b);

(b)    An award of actual damages pursuant to 15 U.S.C. §§ 1681n(a)(1) or 1681o(a)(1);

(c)    An award of statutory damages pursuant to 15 U.S.C. §§ 1681n(a)(1) and 1681o(a)(1);

(d)    An award of punitive damages, as allowed by the Court pursuant to 15 U.S.C. § 1681n(a)(2),

(e)    Costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3) and § 1681o(a)(2); and

(f)    Such other and further relief as this Honorable Court may deem just and proper,

including any applicable pre-judgment and post-judgment interest, and/or declaratory relief.

### VII.  <u>JURY DEMAND</u>

Plaintiff hereby demands jury trial on all issues so triable.

**COREY BOUCHE LARRY**

_____ */s/* _____
Susan M. Rotkis, VSB #40693
Attorneys for Plaintiff
Price Law Group, APC
2290 East Speedway Blvd
Tucson, Arizona 85719
Tel: (818) 600-5506
Fax: (818) 600-5406
E-mail: susan@pricelawgroup.com